

Ryan Farrell, *Trial Attorney*
ID 11832 / WA 58863
601 West Riverside Avenue, Suite 900
Spokane, Washington 99201
509.624.7606
Attorney for Robert Wayne Hutton

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **United States,** | No. 2:22-CR-158-MKD |
| Plaintiff, | **Sentencing Memorandum** |
| v. | |
| **Robert Wayne Hutton,** | |
| Defendant. | |

**Table of Contents**

I. Introduction ................................................................................................... 1

II. Offense Level & Criminal History ................................................................ 2

III. Departures ..................................................................................................... 2

IV. Discussion ..................................................................................................... 2

    A. Fifteen years in prison appropriately punishes Hutton's conduct. ......... 2

        1. His conduct, while serious, is the least culpable way to violate § 2251(a) ... 4

        2. His possession offense is a "run-of-the-mill" case. ................................... 8

        3. He has done everything possible to accept responsibility and show remorse. ................................................................................................ 11

        4. A 15-year sentence is a *de facto* life sentence. .................................... 14

    B. Restitution of $25,000 to Minor 1 and $3,000 to each victim of his Count 2 conviction is appropriate. ........................................................................ 16

V. Conclusion .................................................................................................. 17

## I. Introduction

Robert Hutton respectfully asks for a sentence of 15 years imprisonment, followed by lifetime supervised release. In addition, he asks the Court order $25,000 in restitution to Minor 1 and $3,000 in restitution to any victim under Count 2 who requests restitution. Here's why:

Fifteen years is an appropriately serious punishment for his conduct. Hutton's production conduct was the least culpable way to violate 18 U.S.C. § 2251(a). He surreptitiously recorded Minor 1 nude in the bathroom. He did not distribute those images or videos. He did not engage in any hands-on conduct. And he did not sexually abuse her. Moreover, his possession conduct was simple: downloading and saving child pornography from a peer-to-peer network. He was not a sophisticated distributor or actively engaged in groups trading contraband. This isn't to minimize what he did. He caused lasting emotional and mental harm to Minor 1, which he can never undo. He must be appropriately punished for that; but an appropriate punishment must account for where his conduct falls on the spectrum of offense conduct.

Hutton has never disputed that what he did was morally and legally wrong. This case could have been resolved much earlier had there not been a wrinkle: namely, an active circuit split on whether his conduct violated § 2251(a). That's a significant distinction, as it is the difference between a 15-year mandatory *minimum* prison term or

a 5-year *maximum* prison term for voyeurism.[1] For a 60-year-old man, that could be the difference between death in prison or not. While Hutton never disputed the facts, a trial was necessary to preserve his ability to seek relief should the circuit split be resolved in his favor. Even so, he sought to spare Minor 1 the ordeal of a litigated trial.

He has accepted responsibility for his conduct and accepts that he will face serious punishment. A 15-year prison sentence followed by federal supervision for the rest of his life is sufficient, but not greater than necessary to punish him, protect the public, and deter future misconduct.

## II.  Offense Level & Criminal History

The PSR calculated a Total Offense Level of 40[2] and Criminal History Category of I.[3] Hutton doesn't object to these calculations.

## III.  Departures

Hutton isn't requesting a departure.

## IV.  Discussion

**A.    Fifteen years in prison appropriately punishes Hutton's conduct.**

Sentencing courts should reserve sentences at or near the statutory maximum for the "worst possible variation of the crime" committed by the most dangerous

---

[1] *See* Wash. Rev. Code § 9A.44.115(2)(a) (defining first-degree voyeurism); § 9A.20.021(1)(c) (setting maximum penalties for class C felonies).
[2] Draft PSR at ¶ 55, ECF 94.
[3] *Id.* at ¶ 68.

offender.[4] They may not allow their revulsion for an offender's "hideous" conduct to cloud their judgment as to what is "*appropriate* punishment" in the unique case before them.[5] They still must abide by the parsimony principle, which requires that the sentence be "sufficient, but not greater than necessary, to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation."[6] That's a difficult task when considering child pornography offenders, society's "modern-day untouchables."[7]

    No one condones Hutton's conduct. But a dispassionate look at the case reveals a few things. First, his conduct under Count 1 was far from the "worst possible variation" of a production case. What he did was reprehensible and morally wrong, but it was the least culpable way to violate § 2251(a). Second, his conduct under Count 2 is a "run-of-the-mill"[8] possession case. The advisory guideline range doesn't accurately reflect his culpability for that because § 2G2.2 hasn't kept pace with technological advances; it punishes the average downloader with penalties designed for a sophisticated offender in the pre-Internet age. Third, Hutton has done everything in his power to accept responsibility and express remorse, while preserving his ability to

---

[4] *U.S. v. Aleo*, 681 F.3d 290, 302 (6th Cir. 2012).
[5] *U.S. v. Olhovsky*, 562 F.3d 530, 551 (3d Cir. 2009) (emphasis in original).
[6] *Dean v. U.S.*, 581 U.S. 62, 67 (2017) (emphasis added) (quoting 18 U.S.C. § 3553(a)).
[7] *U.S. v. Cruikshank*, 667 F. Supp. 2d, 697, 703 (S.D.W. Va. Nov. 6, 2009).
[8] *U.S. v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010).

seek relief should the Supreme Court resolve a circuit split in his favor. Finally, 15 years in prison is a very long time. At Hutton's age, it is effectively a life sentence.

Fifteen years in prison is a serious punishment. And on release, Hutton will be subject to supervision—including sex offender treatment and computer monitoring—for the rest of his life. He will have little to no privacy from the government and will not have the freedom to reoffend, even if he wanted to (which he doesn't). Nothing more is necessary to achieve the purposes of sentencing.

1. **His conduct, while serious, is the least culpable way to violate § 2251(a).**

Section 2251(a) punishes any person who "uses . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." Hutton hid a camera in Minor 1's bathroom and recorded videos and images of her using the toilet, showering, and toweling off, all in various stages of undress. This Court has joined courts throughout the country, including the Ninth Circuit,[9] in finding that Hutton's conduct falls within § 2251(a)'s scope. And the Court has a wide statutory range for sentencing under § 2251(a): 15–30 years imprisonment.[10]

When deciding where the sentence should fall in that range, the Court should be as mindful of what Hutton *didn't* do as what he did. Unlike many other production

---

[9] *See U.S. v. Boam*, 69 F.4th 601 (9th Cir. 2023), *petition for cert. filed*, No. 23-625 (U.S. Dec. 7, 2023), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-625.html

[10] 18 U.S.C. § 2251(e).

Sentencing memo
– 4 –

cases, he didn't physically or sexually abuse Minor 1. There was no hands-on conduct at all. He didn't share the media of Minor 1 with anyone. And he did nothing to change Minor 1's behavior. He simply hid a camera in the bathroom, recorded Minor 1 doing what she normally did there, and kept the resulting media for himself.

To reiterate, *that was wrong*. And Minor 1 suffered serious emotional and mental harm as a result. Those long-term impacts will affect her for the rest of her life. And as the direct cause of Minor 1's harm, Hutton must be justly punished. But when deciding how much prison time is just punishment, the Court must look objectively at what he did and did not do. He invaded Minor 1's privacy for his own benefit; he did not sexually abuse her or share the media of her with anyone.

Other cases under § 2251(a) are a good benchmark for where Hutton's conduct falls on the spectrum of culpability:

> ***U.S. v. Morales-Estrada.*** As in this case, Morales-Estrada hid a camera in the family's bathroom and recorded videos of his 14-year-old daughter showering and nude.[11] Although initially charged under § 2251(a),[12] the government allowed him to plead guilty to receipt.[13] He was sentenced to 131 months in prison and 10 years of supervised release.[14]
>
> ***U.S. v. Gfeller.*** Over a three-year period, Gfeller produced images of his 4- to 7-year-old son's genitals and distributed them to Europe.[15] To produce

---

[11] Plea Agreement 5–6, *U.S. v. Morales-Estrada*, No. 2:20-cr-187 (E.D. Wash. Feb. 3, 2022), ECF 42.
[12] Indictment, *Morales-Estrada*, No. 2:20-cr-187 (E.D. Wash. Dec. 15, 2020), ECF 1.
[13] Plea Agreement, *supra* note 10, at 1.
[14] Judgment 2–3, *Morales-Estrada*, No. 2:20-cr-187 (E.D. Wash. Aug. 17, 2022), ECF 62.
[15] Plea Agreement 4–5, *U.S. v. Gfeller*, No. 6:19-cr-6205 (W.D.N.Y. Jan. 31, 2020), ECF 22.

several images, he manipulated his son's penis to cause an erection.[16] He admitted to receiving child pornography in exchange for these images.[17] He pled guilty and was sentenced to 15 years in prison and 15 years of supervised release.[18]

***U.S. v. Holcomb.*** Holcomb produced videos of himself sexually abusing a 6- to 7-year-old girl left in his care.[19] At least one video showed him having penile-vaginal intercourse with the girl.[20] The Court described the case as "[o]ne of the most reprehensible" it had seen[21] before sentencing him to 20 years in prison and lifetime supervised release.[22]

***U.S. v. Adams.*** Adams produced photos and videos of her daughter masturbating her boyfriend while she gave her daughter instructions and of her digitally penetrating and masturbating her daughter—who was only two years old.[23] She also discussed allowing her boyfriend to have sexual intercourse with her daughter.[24] She pled guilty and was sentenced to 22 years in prison and lifetime supervised release.[25]

This comparison reveals that Hutton's conduct is on the low end of the culpability spectrum. It is most like that in *Morales-Estrada*—both hid a camera and recorded a 14-year-old girl showering and nude in the bathroom. While Morales-

---

[16] *See id.* at 5.
[17] Complaint 8, *Gfeller*, No. 6:19-cr-6205 (W.D.N.Y. Mar. 1, 2019), ECF 1.
[18] Judgment 2–3, *Gfeller*, No. 6:19-cr-6205 (W.D.N.Y. Oct. 20, 2020), ECF 36.
[19] Plea Agreement 6–7, *U.S. v. Holcomb*, No. 2:21-cr-75 (W.D. Wash. Dec. 7, 2022), ECF 95.
[20] *Id.*
[21] Press Release, *Former Burlington, Washington, resident sentenced to 20 years in prison for production of images of child sexual abuse*, U.S. Dep't of Just. (Mar. 16, 2023), https://www.justice.gov/usao-wdwa/pr/former-burlington-washington-resident-sentenced-20-years-prison-production-images.
[22] Judgment 2–3, *Holcomb*, No. 2:21-cr-75 (W.D. Wash. Mar. 16, 2023), ECF 116.
[23] Plea Agreement 7–9, *U.S. v. Adams*, No. 2:18-cr-31 (E.D. Wash. Jan. 29, 2019), ECF 101.
[24] *Id.* at 9–10; *see also*, Press Release, *Woman Sentenced to 22 Years in Federal Prison for Conspiracy to Produce Child Pornography and Distribution of Child Pornography*, U.S. Dep't of Just. (Feb. 25, 2020), https://www.justice.gov/usao-edwa/pr/woman-sentenced-22-years-federal-prison-conspiracy-produce-child-pornography-and.
[25] Judgment 2–3, *Adams*, No. 2:18-cr-31 (E.D. Wash. Feb. 25, 2020), ECF 235.

Estrada was allowed to plead to a lesser charge, his case did not involve a separate possession of child pornography. And while both men were Criminal History Category I, Hutton does have a prior misdemeanor for inappropriate communications with a minor. So his case is somewhat more culpable than *Morales-Estrada*.

His conduct is perhaps closest to that in *Gfeller*, in that *Gfeller* also involved possession of child pornography (other than what was produced). But unlike in *Gfeller*—and the other cases—Hutton did not sexually abuse Minor 1. In fact, there was no hands-on conduct at all. Nor did he trade the media of her for other child pornography, as Gfeller did. Courts recognize that treating similarly situated defendants differently is an unwarranted sentencing disparity.[26] It is as much an unwarranted disparity to treat dissimilar defendants similarly.[27] Treating Hutton as similarly situated to defendants who committed far more egregious conduct—that is, creating visual depictions of hands-on sexual abuse—is unwarranted.

Hutton's production conduct falls on the low end of the culpability spectrum under § 2251(a). This weighs in favor of a punishment at the low end of the available sentencing range: 15 years.

---

[26] *See Gall v. U.S.*, 552 U.S. 38, 54 (2007) (discussing § 3553(a)(6)).
[27] *See id.* at 55 (approving of the district court's consideration of "the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated").

Sentencing memo
– 7 –

**2.      His possession offense is a "run-of-the-mill" case.**

Likewise, Hutton's possession conduct is an average downloading case. He used a peer-to-peer network to download videos and images of child pornography—that's it. He wasn't involved in a community actively trading child pornography. He "distributed" only because his peer-to-peer network (Ares) automatically saved downloads to a shared folder, from which other Ares users could download them.[28]

The problem here is that the non-production guideline—§ 2G2.2—was designed for a pre-Internet age and hasn't been updated to reflect advances in technology. As a result, it "routinely result[s] in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases"[29] like this one. It doesn't accurately reflect culpability.

This came about because many enhancements were created in a pre-Internet era. Back then, it was harder to amass large amounts of child pornography and computers were less prevalent. Now computers are everywhere and downloaded material often remains on a computer forever (unless deleted).[30] As a result,

---

[28] *See U.S. v. Stitz*, 877 F.3d 533, 535 n.2 (4th Cir. 2017) ("ARES allows users to access and download files from other users' shared folders. Once a file is downloaded in ARES, the file automatically is shared on the network. A user cannot completely disable sharing through the program.").
[29] *Dorvee*, 616 F.3d at 186.
[30] *See* U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* 1 (2021) [hereinafter 2021 Report] ("the volume and accessibility of child pornography images had increased dramatically" since 2012 "due to the rising use of computers, digital cameras, and internet-based technology like peer-to-peer file sharing programs. The changes in computer and internet technology typically used by . . . child pornography offenders rendered the sentencing

"enhancements that were only intended to apply to the most serious child pornography offenses were routinely applied to most" offenders under § 2G2.2.[31]

Four of these enhancements are routinely applied, despite being "all but inherent to the crime of conviction"[32]:

|  | FY2009[33] | FY2022[34] |
|---|---|---|
| (b)(2) minor less than 12 years of age or prepubescent (+2 levels) | 94.8% | 94.4% |
| (b)(4)(A) involved depiction of sadistic or masochistic conduct (+4 levels) | 73.4% | 53.3% |
| (b)(6) use of computer (+2 levels) | 97.2% | 96.6% |
| (b)(7)(D) involved at least 600 images (+5 levels) | 63.1% | 73.3% |

Combined, these enhancements result in a 13-level increase in most cases under § 2G2.2. And they have a severe impact on the advisory range. For a defendant in criminal history category I, these enhancements increase the range from 27–33 months[35] to 108–135 months.[36] That's right: these enhancements alone, which are "all

---

scheme insufficient to distinguish between offenders with different degrees of culpability.").
[31] *Dorvee*, 616 F.3d at 186.
[32] *Id.*
[33] Statistics identified in *Dorvee*, 616 F.3d at 186 (citing U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009*).
[34] U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics Offender Based: Fiscal Year 2022* 98–99, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2022/Ch2_Offender_FY22.pdf.
[35] Assuming the base offense level of 18. *See* § 2G2.2(a)(1).
[36] Applying the 13-level enhancement to the base offense level of 18 results in a total offense level

Sentencing memo
– 9 –

but inherent to the crime of conviction,"[37] push a first-time offender's guideline range *above* the statutory maximum 10-year sentence for possession of child pornography.[38]

For its part, the U.S. Sentencing Commission "has effectively disavowed § 2G2.2," recognizing that the enhancements are "outdated and disproportionate."[39] Courts also reject it. Since the guidelines became advisory in 2005, courts have increasingly imposed sentences under § 2G2.2's range[40]:



Figure 7.
Trend in Average Guideline Minimum and Sentence Imposed for All §2G2.2 Offenses

This trend holds true for offenders in Hutton's category—that is, criminal history category I and total offense level 40. Less than one-third of similarly situated

---

of 31.
[37] *Dorvee*, 616 F.3d at 186.
[38] *See* 18 U.S.C. § 2252A(b)(2) (setting the maximum sentence for violations of § 2252A(a)(5)).
[39] *U.S. v. Jenkins*, 854 F.3d 181, 189–90 (2d Cir. 2017).
[40] 2021 Report, *supra* note 28, at 22.

defendants in that category received a within-range sentence.[41] In fact, 68% received sentences under the guideline range.[42]

The data has limits: it can't tell us what the appropriate ultimate sentence is in this case. But it makes one thing clear—the range recommended by § 2G2.2 isn't appropriate. Thanks to 13 levels of outdated enhancements, Hutton's range for being a "run-of-the-mill" consumer pushes up against the statutory maximum for the far more serious production charge. His possession conduct doesn't justify regarding him "as the worst of the worst and sentencing him as such."[43] The Court should disregard the advisory range and focus on the facts.

### 3. He has done everything possible to accept responsibility and show remorse.

Hutton has done everything he can to accept responsibility and spare Minor 1 and others the ordeal of a trial. Shortly after his arrest, he expressed remorse and acknowledged that what he did was wrong.[44] His position has not changed. He knows that what he did was wrong, he accepts responsibility for it, and he is genuinely contrite.

---

[41] Data obtained from U.S. Sent'g Comm'n, *Judiciary Sentencing INformation (JSIN)* (last visited Mar. 11, 2024), *available at* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (selecting primary guideline § 2G2.2, CHC I, and OL 40).
[42] *Id.*
[43] *Jenkins*, 854 F.3d at 190.
[44] Stipulation at 3:14–18, ECF 80-1.

But as the Court is aware, there is a circuit split on whether Hutton's conduct falls within § 2251(a)'s scope.[45] The Ninth Circuit, among others, has found that very similar conduct is a crime under § 2251(a).[46] The D.C. Circuit disagrees,[47] as do other thoughtful jurists.[48] This active circuit split complicated the case. Counsel would have been required to advise the Court of this reason why a guilty plea should not be accepted, had Hutton simply pled guilty as he wished.

Counsel, along with Assistant U.S. Attorney Ann Wick, were able to negotiate a reasonable solution. Hutton would plead guilty to the original, single-count indictment[49] and waive his appellate and collateral attack rights, with one exception: he retained the right to seek relief if the circuit split was resolved in a way that made him actually innocent of the charge. The parties would jointly recommend a 15-year sentence. This would preserve his ability to seek relief if the law changed while sparing Minor 1, the government, and the Court the burden of a trial.

Unfortunately, that agreement was never signed. The U.S. Attorney's Office decided that Hutton would need to waive any future relief for actual innocence if he wanted a joint recommendation to 15 years. The option he was given was either (1) a joint 15-year recommendation without a procedural default carve-out or (2) a

---

[45] *See* Def. Rule 29 Mot. 16–18 (identifying the circuit split).
[46] *See Boam*, 69 F.4th at 608–13 (discussing the issue and collecting cases).
[47] *See U.S. v. Hillie*, 39 F.4th 674, 679–92 (D.C. Cir. 2022).
[48] *See U.S. v. Donoho*, 76 F.4th 588, 601–02 (7th Cir. 2023) (Easterbrook, J., concurring).
[49] Indictment, ECF 1.

procedural default carve-out with a potential sentencing range of 15–30 years. In other words, if he wanted to preserve his ability to seek relief if the law changed and made him *actually innocent* of violating § 2251(a), the government wanted the freedom to recommend up to the statutory maximum sentence—and have him waive all his rights in the bargain.

It would be ineffective for defense counsel to allow Hutton to sign away all his rights and get nothing in return. Since the only way to preserve the issue was through a Rule 29 motion, Hutton was forced into a trial. But he still wanted to spare Minor 1 from testifying and to take responsibility for what he did—hence why this case went to a bench trial on stipulated facts.

This behind-the-curtain look on how the bench trial came to be is relevant for the Court to evaluate Hutton's acceptance of responsibility. When a defendant is "genuinely contrite," he may receive credit for acceptance of responsibility despite going to trial.[50] And the Commission directs courts to consider whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction" when determining if he has accepted responsibility.[51] The Commission also notes that a defendant who goes to trial to preserve "a challenge to the applicability of a statute to his conduct" also may qualify for acceptance of responsibility.[52] Both considerations

---

[50] *U.S. v. Cantrell*, 433 F.3d 1269, 1285 (9th Cir. 2006).
[51] U.S.S.G. § 3E1.1 n.1.
[52] U.S.S.G. § 3E1.1 n.2.

apply here. Hutton truthfully admitted all conduct comprising the offenses of conviction—he pled guilty to Count 2 and stipulated to all essential facts for Count 1. He went to a bench trial solely to preserve a challenge to the applicability of § 2251(a) to his conduct—and that only on the advice of counsel.

### 4. A 15-year sentence is a *de facto* life sentence.

What Hutton did is an extremely serious offense. And 15 years in prison is an equally serious sentence. In addition, a 15-year sentence must be considered particularly grave in light of a driving factor at this sentencing: Hutton's age. He is 60 years old, and a mandatory minimum 15-year sentence may end up a life sentence.

The Ninth Circuit has highlighted the gravity of potential *de facto* life sentences—and that they should not be imposed lightly. In *United States v. Lee*, the Ninth Circuit reversed a 96-month sentence imposed on a 72-year-old defendant for multiple sentencing errors.[53] In remanding, the Ninth Circuit highlighted than an 8-year sentence "is likely to be the equivalent of a life sentence and thus a verdict that Lee will die in prison."[54] And that kind of sentence "should certainly give pause to a sentencing court" because "[t]here is a worthy tradition that death in prison is not to

---

[53] 725 F.3d 1159 (9th Cir. 2013).
[54] *Id.* at 1169.

be ordered lightly."[55] The Ninth Circuit specifically instructed the district court to consider "Lee's age and the likelihood that she will die in prison" at resentencing.[56]

Those concerns apply forcefully here. While Hutton is younger than Lee was, his mandatory minimum sentence is nearly double Lee's vacated sentence. As a 60-year-old white male, he is only expected to live for another 20.5 years.[57] Although no one knows with certainty how long he will live, research shows that "as a statistical matter, the life expectancy of an incarcerated individual drops significantly for each year of incarceration."[58] Since each year of incarceration increases the risk of death by 15.6%,[59] chances are Hutton will not survive a 15-year sentence.

This also impacts the victims. The Court must order restitution to Minor 1 and to any victim under Count 2 who requests it.[60] Hutton's ability to pay restitution depends on his ability to make enough money to both support himself and make restitution payments. While in custody, he may earn anywhere from 12¢ to 40¢ per hour.[61] Assuming an eight-hour workday and a five-day workweek, that comes out to

---

[55] *Id.* (quoting *U.S. v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006)).
[56] *Id.*
[57] *See* Elizabeth Arias et al., Ctr. For Disease Control, U.S. Life Tables, 2021, Nat'l Vital Statistics Rep., Nov. 7, 2023, at tbl. 17 (showing life expectancy for White, non-Hispanic males), *available at* https://www.cdc.gov/nchs/data/nvsr/nvsr72/nvsr72-12.pdf.
[58] *Jenkins*, 854 F.3d at 186 n.2 (citing Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989–2003*, 103 Am. J. Pub. Health 523, 526 (2013).
[59] Patterson, *supra* note 57, at 526.
[60] *See* 18 U.S.C. § 2259A.
[61] *Work Programs*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/work_programs.jsp (last visited Mar. 12, 2024).

Sentencing memo
– 15 –

$3,744 to $12,480 over fifteen years. His ability to fulfill his restitution obligations depends on his ability to earn money outside of prison. A sentence longer than 15 years means the victims will never receive the full restitution ordered by this Court.

**B.    Restitution of $25,000 to Minor 1 and $3,000 to each victim of his Count 2 conviction is appropriate.**

Hutton is required to pay restitution to Minor 1 and to each victim of his possession conviction that requests restitution.[62]

As to Minor 1, Hutton must pay "the full amount" of her losses as a result of his conduct, which includes "any costs incurred, or that are reasonably projected to be incurred in the future" by Minor 1 "as a proximate result" of Count 1.[63] Minor 1 has not submitted a restitution request identifying the full amount of her losses, but the government has proposed $25,000 as a restitution amount. Hutton agrees that $25,000 is an appropriate amount and does not object to the Court entering a restitution order to that effect.

As to victims of his possession conviction, two have requested restitution. Hutton must pay restitution "in an amount that reflects [his] relative role in the causal process that underlies" their losses, but no less than $3,000.[64] To determine Hutton's relative role, the Court may consider several factors, such as whether he "reproduced

---

[62] *See* 18 U.S.C. § 2259A(a).
[63] § 2259(b)(1), (c)(2).
[64] § 2259(b)(2)(B).

or distributed images" of the victims, whether he "had any connection to the initial production of the images," "how many images of [each] victim" he possessed, and any other facts relevant to his relative causal role.[65]

Applying those factors, Hutton should owe no more than the statutory minimum $3,000 to any victim of his possession count. He had no connection to the initial production of their images and it is unclear how many images he had of each victim. The only potentially aggravating factor is that Hutton was involved in distribution, but only by virtue of his use of a peer-to-peer network, which automatically made downloaded files available to other users. Accordingly, the Court should order no more than the statutory minimum $3,000.

## V. Conclusion

Hutton engaged in serious, damaging conduct. There is no way he can make up to Minor 1 for the harm he caused her. His conduct warrants a serious punishment: 15 years in prison, followed by lifetime supervised release.

Fifteen years is a significant punishment, made more so by the realistic likelihood he won't survive his sentence. Should he live to release, he will be closely supervised for the rest of his life. Federal supervision at his then-advanced age will be sufficient to protect the public.

---

[65] *Paroline v. U.S.*, 572 U.S. 434, 459–60 (2014).

Dated: March 12, 2024.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Robert Wayne Hutton

s/Ryan M. Farrell
Ryan M. Farrell
601 West Riverside Avenue, Suite 900
Spokane, Washington 99201
t: (509) 624-7606
ryan_farrell@fd.org

**Service Certificate**

I certify that on March 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorney Ann Wick.

s/Ryan M. Farrell
Ryan M. Farrell
601 West Riverside Avenue, Suite 900
Spokane, Washington 99201
t: (509) 624-7606
ryan_farrell@fd.org